**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **SHERRY PRICKETT, an individual** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 15-CV-190-TCK-FHM |
| | ) |
| **SASHAY CORPORATE SERVICES, LLC,** | ) |
| **d/b/a AUTOMATED MAIL SERVICE,** | ) |
| **a Domestic Limited Liability Company,** | ) |
| | ) |
| **Defendants.** | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss (Doc. 9), wherein Defendant moves to dismiss Plaintiff's claim for intentional infliction of emotional distress ("IIED") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

**I.     Factual Background**

The following facts are either alleged in Plaintiff's Complaint or argued in Plaintiff's response to Defendant's motion to dismiss.[1] Plaintiff Sherry Prickett filed suit in Tulsa County District Court alleging (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) gender discrimination in violation of the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 21, § 1301; (3) hostile work environment based on gender, in violation of Title VII; and (4) IIED.

---

[1] *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (court may consider facts argued in response to motion to dismiss so long as they are "consistent with the facts and theories alleged in the complaint").

Plaintiffs' claims arise from her employment with Defendant as a mail clerk from January 1, 1986 until October 7, 2013, when she claims she was constructively discharged. In relevant part, Plaintiffs' Complaint explains the following actions by Defendant:

> Plaintiff has constantly observed men violate, without punishment, the same rules and policies for which women are harshly disciplined. For example, Defendant had a non smoking policy, but men constantly smoked without repercussion, while women were disciplined.
> Plaintiff observed that there is a disparity of pay between men and women, with male employees receiving higher pay than women employees holding the same or similar positions. Furthermore, despite the fact that the Plaintiff was an outstanding employee with the Defendant's company, the Plaintiff never received a raise in the past ten (10) years, while other less qualified men were receiving raises. Plaintiff was consistently paid less than her male counterparts.
> Plaintiff has been subjected to a hostile work environment as a result of being treated unfairly by the Defendant. Plaintiff has been humiliated, singled out from her male coworkers, mocked on the job, and had her actions scrutinized to a higher degree than her male coworkers.
> The Plaintiff's unfair treatment was compounded by her supervisor Matthew Allen's disrespectful treatment. On one occasion, Mr. Allen demanded that the Plaintiff needed to come in to work overtime the day before he expected her to for the shift. When the Plaintiff informed Mr. Allen that she was caring for her bedridden, terminally-ill father, he mocked her for requesting the day off. In his role as her supervisor, Mr. Allen reminded the Plaintiff of the fact that she made this request even after her father had passed away.

(Compl. ¶¶ 12-15.)

In addition, Plaintiff asserts these facts in her response brief:

> [B]eyond [the] disparate treatment, the Defendant also went so far as to humiliate and insult the Plaintiff with regard to her physical therapy. The Defendant actively sought to find the Plaintiff in error by demanding that she produce the telephone number for her physical therapy facility, and then calling the facility to confirm whether she had an appointment, rather than appropriately waiting for her doctor's note on the next day. In this way, Defendant treated the Plaintiff like a child, intentionally and maliciously humiliating and singling her out. . . . . Furthermore, the Defendant's conduct was extreme and outrageous with regard to its response to the Plaintiff's care for her bedridden, terminally ill father. While she was caring for her father, the Plaintiff's supervisor called and demanded that she work overtime the next day, without any prior notice. The Plaintiff explained that she was unavailable, informing her supervisor about her father's condition. Following this incident – and

>with full knowledge of the Plaintiff's emotional distress and fragile state – the Defendant's supervisor intentionally and maliciously used his knowledge of the Plaintiff's father's condition to mock and degrade her in the workplace.

(Resp. to Def.'s Mot. to Dismiss 4-5.)

## II.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is whether the complaint contains enough facts to state a claim to relief that is plausible on its face. *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2006)). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177. In conducting this inquiry, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Id.*; *see also Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).

## III.    IIED

Oklahoma recognizes IIED as an independent tort. *Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986). "An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress." *Miller v. Miller*, 956 P.2d 887, 900

(Okla. 1998). "Intentional infliction of emotional distress does not provide redress for every invasion of emotional serenity or every anti-social act, and it does not protect mere hurt feelings, no matter how justified." *Id.* Therefore, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* at 901 (quotation omitted). "The test is whether the alleged tortfeasor's conduct is simply one of those unpleasant examples of human behavior which we all must endure from time to time, or whether it has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress." *Id.*

The Oklahoma Supreme Court draws "the line between the acceptable and the unacceptable" in accordance with Comment d to § 46 of the Restatement (Second) of Torts. *Id.* Comment d provides:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d.  The court has cautioned that "[n]ot every abusive outburst or offensive verbal encounter may be converted into a tort; on the contrary, it would be indeed unfortunate if the law were to close all the safety valves through which irascible tempers might legally blow off steam." *Eddy*, 715 P.2d at 77.

The facts pled in Plaintiff's Complaint and set forth in her brief cannot support a plausible IIED claim. Failure to give Plaintiff a raise and subjecting Plaintiff to disparate working conditions, even if discriminatory, are not the types of extreme or outrageous behavior contemplated by the Restatement. Allen's conduct toward Plaintiff is also insufficient. It consists of (1) insulting and ridiculing Plaintiff about her need for physical therapy; (2) treating Plaintiff like a child with respect

to her doctor's appointments; and (3) demanding she work overtime when her father was terminally ill; and (4) degrading her in front of her co-workers regarding her father's condition. This type of harassment and mistreatment in the workplace, even in forms more extreme than that alleged here, does not rise to the level of extreme and outrageous conduct for purposes of an IIED claim under Oklahoma law. *See Gabler v. Smith*, 11 P.3d 1269, 1280 (Okla. Civ. App. 2000) (affirming Rule 12(b)(6) dismissal of IIED claim where plaintiff alleged to be subjected to verbal and mental abuse on an ongoing basis, including shouting of profanities and vulgarities at plaintiff) (collecting cases involving insults and other harassing behavior in the workplace that were deemed insufficient to support IIED claims).

**IV.     Conclusion**

Defendant's Motion to Dismiss (Doc. 9) is GRANTED. Plaintiff's fourth claim for relief is dismissed with prejudice pursuant to Rule 12(b)(6).

**SO ORDERED this 5th day of November, 2015.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**